# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

GONZALO SUAREZ-GONZALEZ,

Petitioner,

v.

Case No. 26-CV-590-JPS

SAM OLSON, DALE J. SCHMIDT,
SCOTT SMITH, MARKWAYNE
MULLIN, TODD BLANCHE, and
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

**ORDER**

Respondents.

## 1. INTRODUCTION

Gonzalo Suarez-Gonzalez ("Petitioner"), a Cuban national, arrived in the United States in November 2022. ECF No. 3 at 15; ECF No. 3-2 at 2. Petitioner has filed a habeas petition under § 2241, asserting that he is being detained in violation of his constitutional rights. ECF No. 3. He names as respondents Sheriff Dale J. Schmidt ("Schmidt"), warden of Dodge County Detention Facility—where he is currently detained—and Scott Smith ("Smith"), Jail Administrator of the same.[1] *Id.* at 6. He also names Sam Olson, Director of the Chicago Field Office of Immigration and Custom

---

[1] Because "the default rule is that the proper respondent [in § 2241 habeas petitions] is the warden of the facility where the [petitioner] is being held," the Court will refer only to Schmidt throughout the remainder of this Order. *Gamboa v. Daniels*, 26 F.4th 410, 414 (7th Cir. 2022) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004)); *see also Kholyavskiy v. Achim*, 443 F.3d 946, 949 (7th Cir. 2006) ("In the federal system, [a Petitioner's immediate custodian is] the warden . . . rather than the Director of Prisons." (citing *Robledo-Gonzales*, 342 F.3d 667, 673 (7th Cir. 2003) and *al-Marri v. Rumsfeld*, 360 F.3d 707, 708 (7th Cir. 2004))).

Enforcement's ("ICE") Enforcement and Removal Operations Division; Markwayne Mullin, Secretary of the United States Department of Homeland Security ("DHS"); DHS itself; and Todd Blanche, Acting United States Attorney General (together "Federal Respondents"). *Id.*; ECF No. 4 at 1–2 n.1.

In August 2025, DHS took custody of Petitioner after he was arrested in Outagamie County, Wisconsin and placed him in removal proceedings. ECF No. 3 at 15. On March 13, 2026, an immigration judge granted Petitioner's application for adjustment under the Cuban Adjustment Act ("CAA"), giving him status as a legal permanent resident retroactive by thirty months. *Id.* at 17; ECF No. 3-3. DHS then appealed the immigration judge's order adjusting Petitioner's status. ECF No. 9-1 at 6–10; *see also* ECF No. 17 at 3–4. Respondents are still detaining Petitioner at Dodge County Detention Facility in Juneau, Wisconsin, pursuant to an automatic stay of the immigration judge's grant of relief, which they assert applies for the duration of their appeal. ECF No. 17 at 4. Petitioner later "requested a custody redetermination before the immigration court," *id.*, but the immigration judge denied Petitioner's request, finding that the immigration court lacked jurisdiction to "hear bond requests or to grant bond to aliens who are present in the United States without admission." ECF No. 11-1 (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)).

The Court previously screened the amended petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases.[2] ECF No. 4. Federal Respondents filed their answer to the amended petition, ECF No. 9; Petitioner filed his brief in support, ECF No. 11; Federal Respondents filed

---

[2]The Rules also apply to § 2241 petitions. Rule 1(b) of the Rules Governing § 2554 Cases in the United States District Courts; E.D. WIS. CIV. L.R. 9(a)(2).

a brief in opposition to the petition, ECF No. 17 (which serves as the response for Schmidt also, *see id.* at 1 n.1), and Petitioner submitted a reply, ECF No. 18. Schmidt and Smith filed a "response," wherein they "defer[red] to the arguments and responses of" Federal Respondents. ECF No. 12 at 2; *see also* ECF No. 17 at 1 n.1 (indicating that Schmidt and Smith "authorized" Federal Respondents' counsel "to state that they join in [Federal Respondents'] brief in opposition and do not intend to submit a separate filing"). For the reasons stated below, Petitioner is entitled to a bond hearing.

## 2.    FACTUAL AND PROCEDURAL BACKGROUND

The Court draws the following recitation of facts from the amended petition and exhibits attached thereto, along with the administrative record filed by Federal Respondents.[3] ECF Nos. 3, 3-1, 3-2, 3-3, 9-1. The Court provides additional legal context where necessary.

Petitioner, a citizen of Cuba, arrived in the United States on or about November 22, 2022. ECF No. 3 at 15; ECF No. 3-2 at 2. Petitioner resides in Appleton, Wisconsin. ECF No. 3 at 15. In August 2025, Petitioner was arrested in Outagamie County during a bar fight. *Id.* Petitioner contends that he was the victim in that fight, but he ultimately pled no contest to one count of simple battery, a class A misdemeanor (WIS. STAT. § 940.60(1)) and disorderly conduct, a class B misdemeanor (WIS. STAT. § 947.01(a)). *Id.* at 15–17. Petitioner was sentenced to costs only. *Id.* at 17.

After Petitioner's arrest, DHS transferred him to ICE custody, charged Petitioner with, inter alia, being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), issued him a Notice to Appear, and placed him in

---

[3]For brevity, citations to facts within this section are omitted in later analysis.

removal proceedings pursuant to 8 U.S.C. § 1229a. *Id.* at 15–16; ECF No. 3-2. DHS issued a custody determination as to Petitioner without providing him "an opportunity to post bond or be released on other conditions." ECF No. 3 at 16.

Petitioner then filed for asylum, withholding of removal under the Convention Against Torture, withholding of removal under the Immigration and Nationality Act ("INA") § 241(b)(3), and adjustment under the CAA. *Id.* On March 13, 2026, an immigration judge granted Petitioner's application for adjustment under the CAA, which granted him legal permanent resident status retroactive to April 2023. *Id.* at 17–18; ECF No. 3-3. Petitioner has been detained since August 21, 2025 and "faces the prospect of weeks, months, or even years, in immigration custody, separated from his family and community." *Id.* at 18.

Returning to the habeas petition, Petitioner asserts that his detention violates the Due Process Clause of the Fifth Amendment. *See id.* at 19. For relief, Petitioner asks this Court to "require[e] that Respondents release Petitioner within seven days," "[d]eclare that Petitioner's detention is unlawful," and "[a]ward Petitioner attorney's fees and costs under the Equal Access to Justice Act . . . and on any other basis justified under the law." *Id.* at 19–20.

## 3.     ANALYSIS

As a threshold matter, the Court has jurisdiction to address this petition. A federal court may grant habeas relief to a detainee who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Generally, Congress has limited district court review of immigration decisions. *Padilla v. Gonzales*, 470 F.3d 1209, 1213 (7th Cir. 2006)); *see also* 8 U.S.C. § 1252. However, a district court may entertain

a § 2241 petition that challenges a petitioner's allegedly unlawful detention. *Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 WL 3033967, at \*3–4 (E.D. Wis. Oct. 30, 2025) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018)). Here, Petitioner challenges the legal basis for his detention; accordingly, this Court has jurisdiction to consider the merits of his petition.

There is one additional threshold issue for the Court to address. In its order screening the amended petition, the Court noted that it was "skeptical" that any Respondent apart from Schmidt was "properly sued in this case." ECF No. 4 at 2 n.1 (citing 28 U.S.C. § 2243 and *Kholyavskiy v. Achim*, 443 F.3d 946, 949–53 (7th Cir. 2006)). The Court then advised that "[t]o the extent Respondents believe that any Respondent is improperly named, . . . they should address these issues in their response to the amended petition." *Id.* Federal Respondents did just that, both in their answer, ECF No. 9 at 17 (asserting that Federal Respondents "are improperly named as respondents in this action); and in their opposition brief, ECF No. 17 at 4–5 ("[Federal Respondents] are all inappropriately named and should be dismissed from this action."). The Court agrees with Federal Respondents that they are improperly named in this action. When a habeas petition presents a "'core challenge'—that is, a challenge to 'present physical confinement,'" the proper respondent is the petitioner's immediate physical custodian. *Kholyavskiy*, 443 F.3d at 952 (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004)). In the context of a foreign national challenging his present confinement related to ongoing immigration proceedings (rather than challenging his ultimate removability), the immediate custodian rule applies. *Id.* at 952–53. Petitioner here fits squarely within this rule—he is challenging his present

detention, not any ultimate removability determination. *See generally* ECF No. 3. Accordingly, the Court will grant Federal Respondents' request and dismiss them from this action.

Petitioner contends that "Federal Respondents want to have their cake and eat it too by purporting to make arguments on behalf of . . . Schmidt and Smith, while seeking their own dismissal from the case." ECF No. 18 at 3. Schmidt and Smith have "blown multiple deadlines[,] . . . ignored the deadline to file an opposition brief," and failed to sign Federal Respondents' brief, in violation of Federal Rule of Civil Procedure 11(a). *Id.* at 3–4 ("[E]very pleading, written motion, or other paper [must] be signed by at least one attorney of record in the attorney's name." (quoting FED. R. CIV. P. 11(a))). Petitioner argues that if the Court dismisses Federal Respondents, it should accordingly refuse to consider the rest of their arguments and grant judgment to the Petitioner. *Id.* at 4. The Court will decline to take such a heavy hand here. It is true the United States Attorneys' Office for the Eastern District of Wisconsin ("USAO"), counsel for Federal Respondents, has specifically disavowed representing Schmidt and Smith, "who are employees of the State of Wisconsin." ECF No. 9 at 1 n.1; *see also* ECF No. 17 at 1 n.1. It is also true, however, that Respondents have consistently represented that Schmidt and Smith will join in Federal Respondents' briefs and arguments. ECF No. 12 at 2; ECF No. 17 at 1 n.1. This is consistent with the United States District Court for the Eastern District of Wisconsin's Memorandum of Understanding ("MOU") with the USAO[4] which states that "[t]he USAO agrees to respond to the substance of

---

[4]*Memorandum of Understanding Regarding Habeas Corpus Petitions filed under 28 U.S.C. § 2241 – Federal Detainees*, U.S. DIST. CT. E. DIST. OF WIS., 1 (Dec. 10, 2025) (emphasis added) https://www.wied.uscourts.gov/sites/wied/files/general-ordes/12.10.25%20MOU%20between%20USDC%20and%20USAO%20re%2028%2

[§ 2241] petition[s] on behalf of the federal detainee's custodian *and* any federal respondents named in the petition." *See supra* n.4. In light of this, the Court will accept Federal Respondents' arguments on behalf of Schmidt and Smith. It will, however, encourage the USAO to more clearly establish its position early on in a case, and to cite to the MOU when responding to § 2241 petitions on behalf of detainee's custodians.

With those threshold issues having been addressed, the Court will analyze Petitioner's substantive arguments. First, Petitioner argues that he is entitled to relief because "his indefinite detention deprives him of his liberty in contravention of due process under the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)." ECF No. 11 at 12, 15–23. Second, Petitioner argues that "DHS's unilateral action to stay his release contravenes the [CAA], which provides that an adjustment in status takes places 'upon approval' of the Attorney General." *Id.* at 12, 23–26. And third, Petitioner contends that he is entitled to a bond hearing or immediate release because § 1226 applies to individuals like Petitioner who were residing in the United States interior at the time they were apprehended. *Id.* at 12–13, 26–30. The Court will address these arguments in reverse order.

### 3.1 Section 1225 Governs Petitioner's Detention Prior to the Immigration Judge's Grant of Relief

The Court begins by summarily dismissing Petitioner's argument that § 1226 governs his detention. As the Court as described in detail in previous orders on this exact argument: "Petitioner is properly detained under § 1225(b)(2)(A)" because he "did not enter the United States after inspection and authorization by an immigration officer," thus "the Court

---

0USC%202241%20Petitions%20-%20Updated%20Ex%20A.pdf [https://perma.cc/AJ6U-XNA6] (last visited June 5, 2026).

finds no statutory basis to exclude Petitioner from the category of 'applicants for admission' subject to mandatory detention under § 1225(b)(2)(A)." *Sosa-Vasquez, v. Schmidt et al.*, No. 26-CV-600-JPS, 2026 WL 1831614, at *4 (E.D. Wis. June 25, 2026). Petitioner is therefore not entitled to relief based on this interpretation of §§ 1226 and 1225(b)(2).[5] The Court's view that inadmissible foreign nationals found in the interior are subject to mandatory detention under § 1225(b)(2) does not prevent Petitioner's other statutory and due process arguments, however, because now that the immigration judge has granted Petitioner adjustment of status, the automatic stay is the only reason he remains in detention. In other words, "but for the automatic-stay provision . . . Petitioner would no longer be detained." *Merchan-Pacheco v. Noem*, No. 1:25-cv-03860-SBP, 2026 WL 88526, at *3 (D. Col. Jan. 12, 2026); *see also* 8 U.S.C. § 1225(b)(2)(A) (mandating that applicants for admission "be detained for a proceeding under [S]ection 1229a"); 8 U.S.C. § 1229a (describing removal proceedings); *Immigration Benefits in EOIR Proceedings*, U.S. Citizenship and Immigration Services, "Immigration Benefit Granted by EOIR," https://www.uscis.gov/laws-and-policy/other-resources/immigration-benefits-in-eoir-proceedings

---

[5]The Court recognizes that this issue is one that has been hotly litigated throughout the country, with courts taking different positions. *Compare Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) (concluding "applicant for admission" and "seeking admission" are equivalent) *with Da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026) (concluding § 1226(a) applies to foreign nationals already within the U.S. interior). *Compare Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025) (finding § 1225(b)(2)'s mandatory detention applied to petitioner) *and Ugarte-Arenas v. Olson*, No. 25-cv-1721-WCG, 2025 U.S. Dist. LEXIS 252600 (E.D. Wis. Dec. 8, 2025) (same) *with De La Cruz v. Schmidt*, No. 25-cv-1562-LA (E.D. Wis. Nov. 19, 2025) (finding § 1226(a)'s discretionary release applied to petitioner), *Hernandez Herrerra v. Olson*, No. 25-cv-1994-NJ (E.D. Wis. Jan. 28, 2026) (same) *and Vela v. Schmidt*, No. 25-CV-2004-BBC, 2026 U.S. Dist. LEXIS 10716 (E.D. Wis. Jan. 21, 2026) (same).

[https://perma.cc/827H-2CWW] (last visited July 20, 2026) ("If you have been granted lawful permanent resident status during proceedings before an immigration judge or the BIA *and that decision is administratively final*, you *will* receive a Permanent Resident Card (also known as a Green Card)." (emphasis added)) (to find quoted language, expand section titled "Immigration Benefit Granted by EOIR" at page's end).

### 3.2 Whether the Cuban Adjustment Action Bars Detaining Foreign Nationals While the Department of Homeland Security Appeals an Immigration Judge's Order Granting Adjustment

The Court will begin with the two texts that the parties rely on for their positions on whether the automatic stay violates the CAA. First, the CAA provides that

> notwithstanding the provisions of section 245(c) of the [INA], the status of any alien who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959 and has been physically present in the United States for at least two years, may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment, and the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence. Upon approval of such an application for adjustment of status, the Attorney General shall create a record of the alien's admission for permanent residence as of a date thirty months prior to the filing of such an application or the date of his last arrival into the United States, whichever date is later.

Public L. 89-732 (Nov. 2, 1966). Federal Respondents cite federal regulations, which provide that

> the decision in any proceeding under this chapter from which an appeal to the Board may be taken shall not be executed during the time allowed for the filing of an appeal unless a

> waiver of the right to appeal is filed, nor shall such decision be executed while an appeal is pending or while a case is before the Board by way of certification.

8 C.F.R. § 1003.6(a). Because DHS is currently appealing the immigration judge's order adjusting Petitioner's status, Federal Respondents claim that the order is "non-final" and will only be final once the Board of Immigration Appeals ("BIA") rules on the pending appeal. ECF No. 17 at 7. By implication, Federal Respondents would consider Petitioner's release based on the order adjusting his status to lawful permanent residence as an "execut[ion]" of the immigration judge's decision, which must be stayed while DHS appeals. *Id.* Federal Respondents contend that "[t]he [auto]stay of [an] immigration judge's order is equally applicable to BIA appeals filed by DHS as those filed by an alien." *Id.* at 7–8 (citing *Uritsky v. Ridge,* 286 F. Supp. 2d 842, 843 (E.D. Mich. 2003); *Guerrero v. Decker,* No. 19-C -8092 (RA), 2019 WL 5683372, at *5 (S.D.N.Y. Nov. 1, 2019); and *Hurtado-Ruiz v. Holder,* No. 10-CV-0554-PHX-PGR, 2011 WL 671746, at *2 (D. Ariz. Feb. 16, 2011)).

Petitioner posits that the text of the CAA does not contemplate, and even contradicts, the idea of an automatic stay provision. Federal Respondents take Petitioner's statement that "[t]he CAA is a freestanding provision that does not incorporate, and is not incorporated by, the INA or other provisions of immigration law," as an argument that the automatic stay provision (as with any other INA provisions) cannot apply to the CAA. *Id.* at 8–10 (ECF No. 11 at 23). As Respondents note, "[t]his argument is frivolous; the [CAA] is codified as a historical note to 8 U.S.C. § 1255, which comprises § 245 of the INA." *Estrada v. Holder,* 403 F. App'x 87, 89 (7th Cir. 2010); ECF No. 18 at 12. 8 C.F.R. § 1003.6 applies to the CAA just as any other INA provision. But in reply Petitioner clarifies that he is not contending that no INA provision applies to the CAA, but rather merely

highlighting that "the CAA 'is a freestanding provision' with a history and purpose distinct from the other provisions of immigration law, including the INA." ECF No. 18 at 12 (citing ECF No. 11 at 23). The Court understands Petitioner's brief to provide the background of how the CAA is codified in order to contextualize two of his arguments: (1) that the plain text of the CAA does not permit an automatic stay of an approval of adjustment under the CAA, ECF No. 11 at 24; ECF No. 18 at 11, 13; and (2) that DHS does not have the authority to stay—by way of appeal—an immigration judge's adjustment of status, because the CAA grants such authority only to the Attorney General, ECF No. 11 at 25–26; ECF No. 18 at 12.

Petitioner avers that "[n]o court has previously addressed whether the automatic stay provision under 8 C.F.R. § 1003.6 applies to an applicant who received a favorable immigration decision on the merits under the CAA." ECF No. 11 at 24. He then contends that "[i]t cannot[,] because [the automatic stay] conflicts with the statutory language" of the CAA. *Id.* (citing *Wojciechowicz v. Garland,* 77 F.4th 511, 518 (7th Cir. 2023) and *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 395 (2024)). Petitioner provides that the Attorney General has delegated authority to make adjustment decisions under the CAA to immigration judges. ECF No. 11 at 24 (citing 8 U.S.C. § 1101(b)(4)). Petitioner then argues that the CAA's language provides for a "*mandatory* recording of permanent status," triggered by the immigration judge's "approval" of a request for permanent status. *Id.* (emphasis in original). In Petitioner's view, because of this language, and because "no part of the CAA contemplates continued detention during a period of appeal," continued detention after a grant of adjustment violates the CAA. *Id.* at 24–25.

Petitioner also argues that DHS cannot rely on 8 C.F.R. § 1003.6(a), because DHS does not have the "authority to postpone the effect of the immigration judge's decision," which is effectively "obstructing [that] decision by continuing to detain" Petitioner. *Id.* at 25. Petitioner analogizes the practice, which several courts have struck down, of DHS exercising this same automatic stay "as a means to override the immigration judge's bond decision." *Id.* (citing *Jacinto v. Trump,* 796 F. Supp. 3d 584, 592 (D. Neb. 2025) and *Campos Leon v. Forestal,* No. 1:25-CV-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sept. 22, 2025)).

As Petitioner notes in his reply brief, ECF No. 18 at 11–12, Federal Respondents "entirely fail to address" both these arguments. *See generally* ECF No. 17; *id.* at 7 (only arguing generally, and with inapposite cases,[6] that "[t]he stay of the immigration judge's order is equally applicable to BIA appeals filed by DHS as those filed by an alien."). The Court would be inclined to grant Petitioner a writ on this basis alone; it is, after all, Respondents who must "show cause why the writ should not be granted," and their failure to respond to key arguments fails to show the necessary cause. 28 U.S.C. § 2243; *see Urquhart v. Roeseler,* No. 18-CV-879-JPS, 2019 WL 4305896, at *2 n.2 (E.D. Wis. Sept. 11, 2019) (discussing waiver when a party

---

[6]Each of the cases that Federal Respondents cite markedly differ from the circumstances here, in more ways than one. First, none of the three addresses the CAA or similar laws that were promulgated outside of the INA, nor do any of the cases address similar language to the CAA (which provides not only immediate, but retroactive adjustment of status upon the immigration judge's approval order). Instead, two of the cases cited relate to removal proceedings that were terminated by immigration judges but not due to an adjustment of status, *Uritsky v. Ridge,* 286 F. Supp. 2d 842, 843 (E.D. Mich. 2003) and *Hurtado-Ruiz v. Holder*, No. 10-CV-0554-PHX-PGR, 2011 WL 671746, at *1 (D. Ariz. Feb. 16, 2011); and one relates to a discretionary grant of asylum, *Guerrero v. Decker,* No. 19-CV-8092 (RA), 2019 WL 5683372, at *2–3 (S.D.N.Y. Nov. 1, 2019).

"entirely failed to respond to [the opposing party's] arguments on [a] point, much less cite other, more persuasive cases" (citing *Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.,* 912 F.3d 1049, 1053–54 (7th Cir. 2019) (failure to address an opposing party's argument acts as a concession of the argument))). Because, however, Petitioner is entitled to a writ on independent grounds, *see infra* Section 3.3, the Court will not reach a conclusion as to whether Petitioner is entitled to a writ on the ground that his continued detention violates the CAA.

### 3.3 Petitioner's Continued Detention Offends Due Process

The Fifth Amendment's Due Process Clause prevents the deprivation "of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in [removal] proceedings." *Rodriguez v. Olson*, 814 F. Supp. 3d 945, 959 (N.D. Ill. 2026) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001) (collecting cases).

Petitioner contends that his continued detention despite an immigration judge's grant of relief under the CAA violates his right to due process. ECF No. 11 at 15–23. Under *Mathews*, the Court must evaluate three factors to determine whether the government has taken an individual's life, liberty, or property without due process. *Mathews*, 424 U.S. at 335. "The Court must consider (1) the private interest affected by the government action; (2) the risk that current procedures will cause an erroneous deprivation of that private interest, and the extent to which that risk could be reduced by additional safeguards; and (3) the government's interest in

maintaining the current procedures, including the governmental function involved and the fiscal and administrative burdens that the substitute procedural requirement would entail." *Rojas*, 2025 WL 3033967, at *12 (citing *Mathews*, 424 U.S. at 335).

Federal Respondents urge the Court to disregard the *Mathews* test because "Petitioner has not established that his detention is 'infinite' or 'potentially permanent.'" ECF No. 17 at 24. They alternatively argue that Petitioner's detention survives the *Mathews* test. *Id.* at 24–26. Respondents contend that removal proceedings provide Petitioner with the process he is due and that detention during removal proceedings has generally withstood due process challenges in the Supreme Court. ECF No. 17 at 21–24.

The Court will first dispose of Federal Respondents' argument that the *Mathews* test is inapplicable here. Federal Respondents notably provide just one case that concludes this: a recent decision from the Eastern District of California. ECF No. 17 at 23 (citing *Oth v. Chestnut*, No. 25-cv-1367, 2026 WL 323053 (E.D. Cal. Feb. 6, 2026)). They provide no examples, however—despite the abundance of recent orders pertaining to due process during immigration detention—of courts within the Seventh Circuit agreeing with this conclusion.[7] *See generally id.* And from the Court's survey of recent decisions within this judicial circuit, such an attempt would be unsuccessful; courts readily apply the *Mathews* factors to due process concerns, even for petitioners who (unlike Petitioner here) admit that they are subject to mandatory detention during removal proceedings and/or that

---

[7]Nor do Federal Respondents provide any examples of courts declining to analyze the *Mathews* factors in a circumstance such as here: when the petitioner contests his current detention and his ultimate removability because an immigration judge has granted him adjustment of status.

they are ultimately removable. *See, e.g., Torres Sanchez v. Olson,* No. 26 C 6003, 2026 WL 1998513, at \*3 (N.D. Ill. July 10, 2026); *Bellia Castillo v. Olson,* No. 26 CV 6843, 2026 WL 1894096, at \*9 (N.D. Ill. July 1, 2026); *Rodriguez v. Olson,* 814 F. Supp. 945, 963 (N.D. Ill. 2026) (citing *Parra v. Perryman,* 172 F.3d 954, 958 (1982)); *Ruderman v. Kolitwenzew,* 459 F. Supp. 3d 1121, 1132 (C.D. Ill. 2020); *Rojas,* 2025 WL 3033967, at \*12–13.[8] This Court has followed the same course. *See Picado-Perez v. Hernandez et al.,* No. 26-CV-1009-JPS, 2026 WL 1999157, at \*5 (July 10, 2026)). This makes sense, given that the Seventh Circuit has also utilized the *Mathews* test when considering the due process rights of a foreign national subject to mandatory detention. *See Parra,* 172 F.3d at 958. The Court sees no reason to reject *Mathews* here, and Federal Respondents provide none. *See Merchan-Pacheco,* 2026 WL 88526, at \*4 (rejecting federal respondents' argument and applying the *Mathews* factors to petitioner who had been granted bond but was still detained due to an automatic stay of the bond determination).

Before analyzing the *Mathews* factors, the Court will note that Petitioner's circumstances differ from the cases both parties cite because Petitioner is currently detained pending DHS's appeal of an immigration judge's adjustment of status to Petitioner (to that of lawful permanent resident). In contrast, most jurisprudence related to the automatic stay provision and mandatory detention during removal proceedings relate to petitioners who admit that they are removable or who contest their removability by way of appeal after an immigration judge orders their removal. The Court, consistent with Petitioner's position, has not found any

---

[8]It is notable that while these courts often differ on their conclusion as to other interpretive questions, such as the application of 8 U.S.C. §§ 1225(b) and 1226, they consistently consider the *Mathews* test when determining if petitioners have experienced due process violations.

case that considers how due process applies to continued detention of a foreign national who has obtained an order adjusting their status to lawful permanent resident. The closest the Court has encountered is a foreign national, Lopez Santos, who was granted asylum but later detained and placed in removal proceedings after he committed a crime that triggered mandatory detention under 8 U.S.C. § 1226(c). *Lopez Santos v. Clesceri*, No. 3:20-cv-50349, 2021 WL 663180, at \*1 (N.D. Ill. Feb. 19, 2021). Lopez Santos was detained pending DHS's appeal of an immigration judge's order granting him asylum. *Id.* at \*2. The district court granted Lopez Santos a writ of habeas corpus and required a bond determination, ordering that at the bond hearing, in order for Lopez Santos to remain in custody the government would need to "show by clear and convincing evidence that [he was] either a danger or a flight risk." *Id.* at \*5, 8 (citations omitted). Lopez Santos's circumstances differ from Petitioner because a grant of asylum is merely a precursor to lawful permanent resident status; in contrast, Petitioner was granted adjustment to lawful permanent resident retroactive thirty months under the CAA. In the Court's view, Petitioner's due process analysis is that much clearer than Lopez Santos's.

Turning to the first *Mathews* factor, Petitioner's private interest is "the most elemental of liberty interests—the interest in being free from physical detention." *Hamdi v. Rumsfeld,* 542 U.S. 507, 529 (2004) (citing *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992) and *Parham v. J.R.,* 442 U.S. 584, 600 (1979)). Federal Respondents contend that Petitioner's interest is minimal, however, because he "still lacks legal status at this point." ECF No. 17 at 25. While the Court has not decided whether the immigration judge's relief was "final" when ordered or if it instead remains "non-final" pending appeal as Federal Respondents argue, *see supra* Section 3.2, the Court nonetheless finds

Petitioner's interest here to be weighty indeed. This is not a circumstance like *Parra*, where the petitioner conceded that he was eligible for removal and where his "removal [wa]s overwhelmingly likely." *Parra*, 172 F.3d at 956. A petitioner who "does not attempt to argue that he is 'entitled to remain in' the United States" has a "private interest in release pending his removal proceedings [that] is relatively minimal." *Rodriguez*, 814 F. Supp. 3d at 963. But here, not only does Petitioner contend that he is not removable, an immigration judge agreed with him and adjusted his status under the CAA. The Seventh Circuit has suggested that the private interests at stake could be "wholly different" in a case such as Petitioner's. *See Gonzalez v. O'Connell*, 355 F.3d 1010, 1020 (7th Cir. 2004). And the Court believes that Petitioner's case is. For Petitioner, it is the government action and the government action alone—namely, DHS's appeal—that is depriving Petitioner of a potentially permanent liberty interest within the United States. This factor heavily weighs in Petitioner's favor.

As to the second *Mathews* factor, Federal Respondents contend that "Petitioner has not established a risk of erroneous deprivation of any liberty interest." ECF No. 17 at 25. Petitioner, in contrast, argues that "the risk is high that [Petitioner] will be erroneously deprived of his liberty interest given the lack of additional or substitute procedural safeguards" and that "[e]ven if the judgement granting [his] Legal Permanent Resident status [is not considered] final, [Petitioner's] continued detention, without particularized supporting facts . . . violates Due Process." ECF No. 11 at 20–21. The Court agrees with Petitioner. First, Federal Respondents' argument that Petitioner has presented *no risk* of erroneous deprivation of his right to liberty is one that nears absurdity. As the Court recognized above, the *only* thing preventing Petitioner from, at this very moment, living free as a

lawful permanent resident in the United States is DHS's appeal of the immigration judge's adjustment of Petitioner's status. And, as Petitioner notes, the appeal itself may last years, as the BIA faces a burgeoning backlog of appeals.[9] ECF No. 18 at 7 ("Because the [BIA] has a backlog of over 200,000 cases, there is no telling when [DHS's] appeal will be decided." (footnote omitted)). Adding to this, Petitioner notes that "there has been no movement to date on the appeal since filed." *Id.* (citing ECF No. 19 at 6). Federal Respondents do not attempt to argue that their appeal has a likelihood of success before the BIA.[10] The Court finds that there is a substantial risk of erroneous deprivation of Petitioner's liberty interest, and the due process of the appeal proceedings do not provide meaningful procedural safeguards given the potential duration of DHS's appeal. Accordingly, the second *Mathews* factor weighs in Petitioner's favor.

As for the third *Mathews* factor, generally, for foreign nationals mandatorily detained and awaiting removal determinations, "the

---

[9]*See All Appeals Filed, Completed, Pending*, EXEC. OFF. FOR IMMIGR. REV., https://www.justice.gov/eoir/media/1344986/dl?inline [https://perma.cc/4NZL-G3AR] (Jan. 26, 2026) (indicating that, at the end of the first quarter of 2026, 219,935 cases were with the BIA pending appeal). Court may take judicial notice of information from official government websites. *Gilsinger v. Cities & Villages Mut. Ins. Co.*, 693 F. Supp. 3d 975, 987 n.3 (E.D. Wis. 2023) (citing *Ambrosetti v. Or. Cath. Press*, 458 F. Supp. 3d 1013, 1017 n.1 (N.D. Ind. 2020)); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (gathering sources).

[10]The Court's own research reveals that DHS may be very unlikely to succeed. *See Immigration Appeals to the BIA*, OPENIMMIGRATION, https://www.openimmigration.us/appeals [https://perma.cc/8MYP-CDUC] (Feb. 2026) (utilizing Department of Justice, Executive Office for Immigration Review statistics data to summarize that BIA overturns just 7.2% of immigration judges' decisions and remands another 14.1% for further proceedings). Because this is not an official government website, the Court merely notes that this information could have been relevant to the due process analysis had it been offered by the parties, but it does not rely on these statistics substantively in reaching its decision here.

government has a 'powerful interest in maintaining the detention in order to ensure that removal actually occurs.'" *Sosa-Vasquez v. Schmidt et al.,* No. 26-CV-600-JPS, 2026 WL 1831614, at *9 (E.D. Wis. June 25, 2026) (quoting *Parra,* 172 F.3d at 958). But the Court has already repeatedly explained how Petitioner's circumstances differ here; indeed, the Seventh Circuit quote in *Parra* presumes that the Petitioner will be removed. *Parra,* 172 F.3d at 958 ("to ensure that removal actually occurs"). But Petitioner's eventual removal is tentative at best, *see supra* note 10, and Federal Respondents have articulated no other interest beyond a vague reference to "crafting procedures related to immigration policy." ECF No. 17 at 26 (quoting *Rodriguez,* 814 F. Supp. 3d at 964). And as Petitioner has pointed out, the very fact that he has an order granting his adjustment of status makes it very unlikely that he would flee (in contrast with cases where the immigration judge's removal determination has not yet been made or was unfavorable to the petitioner). ECF No. 11 at 21 ("The detention of [Petitioner] has nothing to do with flight risk because he has no incentive to flee."). While the Court recognizes that the government has a legitimate interest in ensuring that removable foreign nationals are ultimately removed if so ordered, and more generally in managing the procedures surrounding immigration policy, it finds these interests to be minimal in a case such as this, where Petitioner has been granted lawful permanent resident status and is detained for the sole purpose of DHS's appeal. These interests cannot, and do not, outweigh the first and second *Mathews* factors in this case. *See, e.g., Uritsky,* 286 F. Supp. 2d at 846–47; *Joseph v. Decker,* No. 18-CV-2640(RA), 2018 WL 6075067, at *12 (S.D.N.Y. Nov. 21, 2018); *Vargas v. Beth,* 378 F. Supp. 3d 716, 727 (E.D. Wis. 2019) ("Courts in this circuit and across the country regularly grant habeas relief to alien detainees whose

mandatory detention without bond pending removal is unconstitutional as applied to them." (citing *Baez-Sanchez v. Kolitwenzew,* 360 F. Supp. 3d 808, 815–16 (C.D. Ill. 2018) and *Hernandez v. Decker,* No. 18-CV-5026 (ALC), 2018 WL 3579108, at *10 (S.D.N.Y. July 25, 2018))); *c.f. Merchan-Pacheco,* 2026 WL 88526, at *9 (referencing the "near unanimity" of at least fifty district court decisions finding that DHS's application of an automatic stay of an immigration judge's grant of bond violates a foreign national's due process rights).

Federal Respondents cite *Jennings v. Rodriguez* to argue that Petitioner's ongoing detention does not violate due process because it has a "definite termination point," namely, "the conclusion of his immigration proceedings concerning his application for [lawful permanent resident] status." ECF No. 17 at 22–23 (citing 583 U.S. 281, 304 (2018)). But in *Jennings,* the Supreme Court relied on the *statutory* text of the INA (§ 1226(c)) that required mandatory detention for foreign nationals who had committed certain crimes, which mandates detention "pending a decision on whether the alien is to be removed from the United States." *Jennings,* 583 U.S. at 304 (quoting 8 U.S.C. § 1226(a)). But here, to justify Petitioner's continued detention even after an order granting him adjustment of status, Federal Respondents rely not on any statutory text, but rather on agency regulations that do not clearly apply to Petitioner's circumstances and arguably conflict with the CAA's text. *See supra* Section 3.2. Federal Respondents also categorize Petitioner as a "removable alien," disregarding Petitioner's denial of that conclusion and the order from an immigration judge backing up Petitioner's position. The Seventh Circuit has suggested that such a "good-faith claim" to lawful permanent residence may make mandatory detention violate due process. *Gonzalez,* 355 F.3d at 1019–20,

1021 (noting that such facts would result in "[a] wholly different case"). The Court does not decide this question one way or the other, because the question here is simpler: Petitioner does not merely have a "colorable" claim to lawful permanent resident status, he has an order retroactively adjusting his status to prior to the start of his detention. *Id.* And Petitioner is not awaiting a removability determination from an immigration judge, nor is *he* appealing an immigration judge's order of removal; quite the contrary, he has been granted lawful permanent resident status and is merely detained pending DHS's appeal. In light of this, and all the above analysis, Federal Respondents have failed to show cause as to why Petitioner's continued detention—for no less than *eleven months* as of this Order—without an individualized bond hearing comports with due process.

"Due process is flexible and calls for . . . procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)) (internal modifications omitted). Here, procedural protections warrant an individualized bond hearing to determine whether Petitioner is a flight risk or a danger to the public. In the absence of the government providing clear and convincing evidence that either category applies to Petitioner, he should be provided the opportunity for release on bond, pending the outcome of DHS's appeal. *See, e.g., Lopez Santos*, 2021 WL 663180, at *5, 7 ("[T]he Due Process Clause of the Fifth Amendment entitles Lopez Santos to an individualized bond hearing before an immigration judge who can assess whether release pending the resolution of his removal proceedings would be appropriate."); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020) ("[W]e see no basis for abandoning the settled rule that when a party

stands to lose his liberty, even temporarily, we hold the Government to a higher burden of proof." (citation omitted)); *Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020) ("We agree with the district court's conclusion that at Velasco Lopez's new bond hearing, a clear and convincing standard was appropriate." (collecting cases)); *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *8 (N.D. Ill. Oct. 16, 2025) ("When granting immigration detainees' habeas petitions, an overwhelming consensus of courts have placed the burden on the government to prove by clear and convincing evidence that the detainee poses a danger or flight risk." (internal quotation marks omitted) (collecting cases)).

**4.      CONCLUSION**

For the reasons stated herein, Petitioner's petition for a writ of habeas corpus will be granted and the Court will order that a bond hearing take place before an immigration judge within thirty days of the date of this Order. At that hearing, the government bears the burden of proof to justify Petitioner's continued detention by clear and convincing evidence. The parties will further be ordered to file a joint status report within thirty days of this Order.

Accordingly,

**IT IS ORDERED** that Respondents Sam Olson, Markwayne Mullin, Todd Blanche, and the United States Department of Homeland Security be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that Petitioner Gonzalo Suarez-Gonzalez's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, ECF No. 3, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Petitioner Gonzalo Suarez-Gonzalez be provided a bond hearing before an immigration judge within

**thirty (30) days of this Order,** at which the government must bear the burden of proof to justify Petitioner Gonzalo Suarez-Gonzalez's continued detention by clear and convincing evidence; and

**IT IS FURTHER ORDERED** that the parties shall **FILE** a joint status report on or before **thirty (30) days of this Order.**

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of July, 2026.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge